In re WENATCHEE HEIGHTS ORCHARD CO.

(District Court, W. D. Washington, N. D. December 3, 1913.)

BANKRUPTCY (§ 345*)—PROVABLE CLAIMS—FRAUDULENT ACTS OF CREDITORS.
Claimants, who organized and were the only stockholders and officers of bankrupt corporation, also held its notes to themselves. After it had become indebted to others, they fraudulently caused substantially all of its property to be transferred to a second corporation, making it appear by means of false recitals in the minutes of stockholders' and trustees' meetings that the transfer was in payment of their own notes, when in fact it was without consideration and they had not parted with the notes. Other creditors having brought suit against the bankrupt, claimants, and the second corporation and obtained a receivership, as the result of a settlement the property was transferred back. After the bankruptcy claimants sought to prove their notes against the estate. Held that, while there was not such evidence of their being fraudulent in their origin as to warrant their disallowance entirely in view of the fraudulent action of claimants in so transferring the property that neither they nor the bankrupt could have recovered it, their claims would be postponed to those of all other creditors, in so far as the property transferred and its proceeds are concerned.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. § 345.*]

In the matter of the Wenatchee Heights Orchard Company, bankrupt. On review of orders of referee. Modified.

See, also, 204 Fed. 674; 205 Fed. 964.

Walter Schaffner and Raymond D. Ogden, both of Seattle, Wash., for trustee.

Corwin S. Shank and H. C. Belt, both of Seattle, Wash., for claimants, Wells and McPherson.

CUSHMAN, District Judge. Hearings were had before the referee upon objections to the claims of L. V. Wells and E. H. McPherson, and the petition of the trustee for leave to use the funds belonging to the estate of the bankrupt, for the purpose of complying with an order of the Public Service Commission of the state of Washington, made against said corporation before it was adjudicated a bankrupt, which order required the corporation to increase the supply of water for irrigation of the lands sold by it. The referee allowed the claims in part, disallowed a part, and denied the petition of the trustee. Both

the claimants and trustee pray a review of the referee's decision. For the reasons given by the referee in his opinion, his order is affirmed and approved, except as stated herein.

The claimants, L. V. Wells and E. H. McPherson, organized the Wenatchee Heights Orchard Company in 1906. They have since continued to be the sole stockholders and controlling officers of that company. That corporation, for the stock issued, acquired some 1,200 acres of land near Wenatchee, a large part of which was suitable for orchards and capable of irrigation, together with certain shares of stock in an irrigation company. The lands were, when acquired by the company, subject to a $50,000 mortgage, which was assumed by the company. In addition to the stock, the company agreed to pay, as part of the purchase price of the land, claimant Wells $40,000 and claimant McPherson $5,850. It is the allowance by the referee of the residue of these amounts and interest of which the trustee complains.

A brief statement of the transactions prior to bankruptcy is necessary. The lands of the company were platted, for sale, into five and ten acre tracts. To irrigate them it was necessary to obtain water of the company in which the Wenatchee Heights Orchard Company held stock. By the end of 1911 all but a few acres of the irrigable lands had been sold. The contracts under which the lands were sold provided for a—

"perpetual right, appurtenent to the said land, of the use of water.  *  *  *

"(4) The grantor agrees to furnish water for irrigation purposes for the said premises to the amount of two (2) acre-feet of water per acre  *  *  * during the irrigation season.  *  *  *

"(5) Said land and water right to be conveyed by a warranty deed to said grantee when said purchase price shall have been fully made.  *  *  *  "

The grantor was to plow the ground, plant the orchards, cultivate, irrigate, and care for them, and pay the taxes until the purchase price was fully paid.

In 1911 the Wenatchee Heights Orchard Company began trading its contracts with the purchasers of these tracts for real estate in and near Seattle, Wash. All of the contracts were in a short time exchanged. In 1911 the company moved its office from Seattle to Wenatchee. In the same year suit was brought against the company by one of its contract holders for damages on account of a failure to furnish the agreed amount of water for irrigation. A judgment for $1,200 was obtained in the course of the year and paid by the bankrupt. In 1912 a similar suit was brought by another contract holder, who obtained a judgment for $2,000. This suit was appealed. In the same year, upon complaint of other contract holders, after a hearing, the Public Service Commission of the state of Washington found the water supply insufficient to furnish the water provided for in the deeds and contracts of the company and ordered the corporation to so increase the water supply as to furnish it. This was not done.

Some time prior to December 5, 1911, the Summit Investment Company was incorporated. The claimant L. V. Wells caused all of its stock, save one share, to be issued or transferred to one B. E. Gates, who had theretofore, as agent, assisted in selling some of the orchard

tracts of the Wenatchee Heights Orchard Company; the one remaining share being issued to the wife of Gates.

While Gates had theretofore been engaged as stated, and there may have been a small balance due him upon some of his transactions with the Wenatchee Heights Orchard Company, it is clear from the testimony that the stock in the Summit Investment Company was given to him without consideration. Gates became president and his wife secretary and treasurer of that company. The only property ever held by it was transferred to it by the Wenatchee Heights Orchard Company.

New 90 days notes were made out by the Wenatchee Heights Orchard Company to claimants, L. V. Wells and E. H. McPherson, dated September 21, 1911, which notes included the residue of the original indebtedness, which has been allowed by the referee.

Under date of October 10, 1911, the minutes of a stockholders' meeting of the Wenatchee Heights Orchard Company, signed by the claimants, L. V. Wells and E. H. McPherson, embody the following letter addressed to that company on the letter head of B. E. Gates and signed by him:

"Having purchased the following promissory notes made by your company, viz., one dated Sept. 21, 1911, to L. V. Wells for $57,000, due ninety days from date, and one dated Sept. 21, 1911, to E. H. McPherson for $18,000, due ninety days from date, and being desirous of collecting the same, I propose to take the following described property in full satisfaction of the said notes and accumulated interest: * * * I agree to assume the mortgages against the above property, amounting to $33,500."

The minutes then continue:

"After careful consideration of the proposal, on motion duly made by a stockholder, seconded and unanimously carried, all stock voting in favor, it was decided to accept the said proposal. * * *        L. V. Wells.
                                                        "E. H. McPherson."

The minutes of a special meeting of the trustees of the Wenatchee Heights Orchard Company, held the same date, read:

"Whereas, the proposal of B. E. Gates to accept certain property of the company in payment of notes given by the company to L. V. Wells and E. H. McPherson and held by him, having been accepted by the stockholders, therefore: Resolved, that the president and secretary be and are hereby authorized to complete the transfer in accordance with said proposal. * * *
    "L. V. Wells, President.              E. H. McPherson, Secretary."

The minutes of a special meeting of the board of trustees, under date of December 7, 1911, read:

"Upon motion duly made by a trustee, and seconded, the following resolution was unanimously adopted: 'Whereas, the trustees and stockholders of the company have heretofore accepted a proposition made by B. E. Gates to exchange certain property for notes given by the company to L. V. Wells and E. H. McPherson, and whereas, a request has been received from the said B. E. Gates, that the above property be deeded to the Summit Investment Company: Resolved, that the president and secretary be and are hereby authorized to execute the necessary deeds as referred to in a resolution adopted by the trustees on Oct. 10, 1911, to the Summit Investment Company, instead of to B. E. Gates.' * * *
    "L. V. Wells, President.              E. H. McPherson, Secretary."

In accordance with these resolutions, transfers were made to the Summit Investment Company.

Claimants, Wells and McPherson, both testified that they never parted with the notes mentioned in these minutes; that they were not purchased by, or assigned to, Gates and were never surrendered by claimants or canceled at the time of the transfer of the real property to the Summit Investment Company or at all. E. H. McPherson testifies:

"Q. Now, at the time of these transactions, who held those notes? A. Well, to explain the whole situation, of course we still held the notes. It was simply a means of transferring this property out of the hands of the Wenatchee Heights Orchard Company to the Summit Investment Company. Q. Was there any change in the physical possession of that property? A. Not at all. Q. Did you ever hand the notes over to Mr. Gates? A. No. Q. Mr. Gates never had them at all? A. Never had them. Q. And they weren't canceled and new notes issued? A. No, they were not canceled. Q. The whole transaction was merely a fiction except so far as the property was transferred? A. The property was transferred to get it out of the hands of the Wenatchee Heights Orchard Company. Q. But the notes being transferred to Mr. Gates, that part was all a fiction? A. He never really held them. Q. Never had any interest in them? A. No."

No acknowledgment of trust by either Gates or the Summit Investment Company, admitting the interest of either Wells, McPherson, or the Wenatchee Heights Orchard Company, was made; nor was any record preserved of any such interest.

The testimony on behalf of claimants is to the further effect that the property, after the transfer to the Summit Investment Company, continued in the control of the Wenatchee Heights Orchard Company.

In December, 1912, suit was brought in the superior court of King county by certain contract holders of the Wenatchee Heights Orchard Company against it, the Summit Investment Company, Wells, McPherson, Gates, and his wife for the appointment of a receiver for the Wenatchee Heights Orchard Company and to have the property transferred to the Summit Investment Company adjudged to belong to the Wenatchee Heights Orchard Company. Subsequent to the appointment of a receiver for the Wenatchee Heights Orchard Company, it was adjudicated a bankrupt.

In the suit in the superior court, an agreement was eventually reached between the plaintiffs, the receiver, and the defendants, Wells and McPherson, which recited that all the property of the Summit Investment Company was in effect the property of the Wenatchee Heights Orchard Company. It provided for new directors for each of these companies. It further provided that the Summit Investment Company should supply the funds required to perform the obligations of the Wenatchee Heights Orchard Company, so far as the same could be supplied from that company's assets. Further provision was made for the transfer of all of the stock of the Summit Investment Company to a trustee, except sufficient shares to qualify the directors to hold office.

"And the said Wenatchee Heights Orchard Company shall in particular, as soon as may be, proceed to carry out the order of the Public Service Commission of the state of Washington made and entered in cause No. 706 before said Public Service Commission September 28, 1912. * * *"

Further provision was made for the dismissal of the suit. Subsequently, and after the adjudication in bankruptcy, the Summit Investment Company deeded the property back to the Wenatchee Heights Orchard Company. Claimants now contend that the transfer of the property to the Summit Investment Company was merely an effort on their part to obtain a preference, and that, it having been voluntarily abandoned and undone by them, their claims should be unaffected by reason of anything they may have done. The trustee contends that the transfer was a fraud upon the creditors of the company and for the purpose of hindering and delaying its creditors. The referee rules:

"The referee has not overlooked the claim of the trustee that certain transactions between the bankrupt corporation and the Summit Investment Company, in which the note held by L. V. Wells was used as the apparent consideration for the transfer of the property of the bankrupt corporation to said Summit Investment Company, amounted to a payment of the note, but, in his opinion the property for which the note is claimed to have been surrendered having been recovered by the trustee of the bankrupt estate, he cannot receive the benefit thereof and at the same time have the right to claim that the note has been paid. While it is possible that neither party to these transactions between the bankrupt corporation and the Summit Investment Company would have been entitled to relief as against the other, yet, relief having been obtained, the consideration, though fraudulent, must be returned."

If it be true that both the purpose and effect of this transfer was merely to give L. V. Wells and E. H. McPherson preference over the other creditors, as concluded, the ruling is doubtless correct. 20 Cyc. 472b et seq., 572, 624k11, 636; White v. Cotzhausen, 129 U. S. 329, at pages 344, 345, 9 Sup. Ct. 309, 32 L. Ed. 677; U. S. Rubber Co. v. American Oak Lea. Co., 181 U. S. 434, at pages 446, 447, 21 Sup. Ct. 670, 45 L. Ed. 938; Hutchinson v. Otis, 190 U. S. 552, 23 Sup. Ct. 778, 47 L. Ed. 1179.

The creditors of the bankrupt were, in the main, those with small holdings under the sale contracts, with unliquidated claims against the corporation, and its books were in the sole control of the claimants.

According to claimants' own testimony, the property recovered from the Summit Investment Company was transferred without consideration to that company. The new notes given Wells and McPherson were at the time of that transfer not yet due and might have been transferred to innocent purchasers. As pointed out, no record of the interest of the Wenatchee Heights Orchard Company was preserved, and no acknowledgment of trust by either Gates or the Summit Investment Company was given or required. A false record was made by claimants in the minute book of the Wenatchee Heights Orchard Company to the effect that Gates had purchased claimants' notes against the Wenatchee Heights Orchard Company and that for them he received the company's property. Claimants must be held to have contemplated the probable result of their acts.

On its face the Summit Investment Company had become the owner of the principal assets of the Wenatchee Heights Orchard Company, freed from any claim by any one connected with that company. If by any chance this false record, in the control of claimants, was brought to light, still by it it had been made to appear that Gates was an innocent holder of the notes before maturity, without notice of any equi-

ties on the part of the contract holders, and the Summit Investment Company would be in a like advantageous position.

If the true relation between the Wenatchee Heights Orchard Company, the Summit Investment Company, and L. V. Wells and E. H. McPherson was brought to light, under the circumstances it would probably require more than four months' time after the transfer to do so and a preference thereby be established, especially as the creditors, other than claimants, had principally unliquidated claims, and the company defending against their liquidation would be in the sole control of claimants, Wells and McPherson, and finally if discovered, and bankruptcy intervened short of four months, the stand might further be taken that, while the preference had not been gained, yet these claims were unsmirched by reason of these transactions.

The discouragement of creditors, naturally resulting from the apparently hopeless condition of the company, would be likely to result in advantage to claimants, both as creditors and as sole stockholders of the corporation.

Claimant Wells, having testified that the Summit Investment Company was organized to facilitate the transaction of the business of the Wenatchee Heights Orchard Company, when repeatedly pressed to state how the transactions with the Summit Investment Company would facilitate the business of the Wenatchee Heights Orchard Company, gave the following explanation:

"A. We proposed to carry out the Wenatchee Heights Orchard Company project to take care of the land and the orchards and to perfect the water system, so that the Wenatchee Heights Orchard Company would be able to fulfill all of its contracts to the purchasers of its land. Early in that year we had—that would be 1911—we had been sued and a judgment had been recovered against us, which we regarded to be entirely unjust. We thought that no person should have any right to recover a judgment against the Wenatchee Heights Orchard Company on the grounds that those people had, and we were afraid, since they had recovered a judgment, we were afraid that others might possibly follow their course, and it was my idea to conserve the resources of the Wenatchee Heights Orchard Company in such a manner as to prevent the possibility of a repetition of what he had experienced in the matter of this judgment. Q. In other words— A. Just a minute, until I get through. That was my idea. We were afraid that possibly there might have been—might be others who would be encouraged by that fact that Mr. Hotchkin had obtained a judgment and would enter suits and thus dissipate the resources of the Wenatchee Heights Orchard Company in a way that we thought was not just. It was our idea to accomplish what we had started out to do, to furnish a water right which would be unquestioned in every particular and to carry out our contracts with our land purchasers perfectly; but if others who had not proper claims against the company were able to recover on judgments, necessarily the assets of the Wenatchee Heights Orchard Company would have been dissipated before we could carry out our contracts; and it was my idea to surround these resources by such safeguards as would prevent their being dissipated in that manner, and to use them for the purpose of carrying out the contracts of the company in regard to their water rights and cultivation of the land. Q. In other words, you were seeking a method by which you could prevent any person who secured a judgment against your company from levying upon this property and selling it? A. It was not my idea to prevent any person having a judgment, a just judgment, against the company— Q. You were to be the judge of whether it was a just judgment or not? A. Well, now, I am not saying that. Q. And you were trying to put those assets in such shape so that anybody who secured a judgment for the reasons that Hotchkin did would be unable to touch that

property, isn't that true? A. No, that was not my idea exactly. My idea was to put the matter in such shape as to discourage persons who thought of entering suits for causes of that kind."

It therefore appears that the scheme was stripped of its euphony to hinder and delay creditors.

The referee did not find such clear and convincing proof of gross overvaluation of the property acquired by the company on its organization as to warrant a finding of fraud, avoiding the indebtedness to the claimants, then assumed by the company. This conclusion is approved, and, as the notes are shown by claimants' testimony to have been at all times in their possession, never acquired by Gates, and therefore never surrendered to the Wenatchee Heights Orchard Company, they will not be treated as paid; but it does not follow that the only disadvantage suffered, on account of the transaction, by Wells and McPherson, is the loss of their now claimed preference. By their acts, both as creditors and for the corporation, said company's property was transferred in such a way, as found by the referee, that neither they nor the corporation could recover it. The other creditors alone could compel its return to the corporation. They did so. To now hold that the claimants, who were parties to such transfer, may resort to the property they helped put out of the reach of the corporation and themselves, the same as the other creditors, would neither tend to encourage innocent creditors to diligence nor discourage those dishonestly inclined from scheming for an unfair advantage.

The claims of Wells and McPherson have not been shown to be fraudulent and will therefore be treated as legitimate. But, while there is a wide range between one with a purely fabricated claim and one who seeks to secure a preference for a valid claim, yet the holder of a valid claim may lend it and himself to the accomplishment of a fraud and both be affected thereby. 20 Cyc. 487c, 638.

Claimants might be diligent in securing the advantage of a preference, without prejudicing their claims. They might even be secret in so doing, if there was no duty on their part to speak. U. S. Rubber Co. v. Am. Oak Lea. Co., 181 U. S. 434, at page 447, 21 Sup. Ct. 670, 45 L. Ed. 958, supra. But, if the creditor and the corporation do undertake to speak, they are bound to speak truly, and, if in these corporation minutes they spoke falsely in a matter naturally tending to their advantage and the deception and disadvantage of other creditors, no element of actual fraud appears lacking, even though the claim evidenced by the notes be not fabricated but a genuine debt.

It is not necessary to determine the effect of a confessed valuation now of the transferred property not exceeding the creditor's established claims. Such transactions as these should be tested by the situation, action, and intention of the parties at the time they acted, and the then probable effect of such action. Though the court has not found such clearly established fraud in these notes, at the inception of the claim, in the evidence, as to void them, yet they were not free from question, and city property of the nature of that transferred is liable to sudden fluctuations in value.

At the time of the transfers to the Summit Investment Company,

it was not unreasonable to calculate that the property had a present value, tested by its potential value, in excess of the established claims. The same rule that saved claimants from condemnation for overvaluation of the property amounting to fraud at the organization of the corporation, will obtain in testing their conduct in the matter of the transfer of this property. Their conduct shows that they considered it of greater value than their claims. Arriving at that not then unreasonable conclusion, the effect of their conduct will be tested as though their conclusion was a verity in establishing actual fraud upon their part.

The fact that, after other creditors brought a suit against Gates, the Summit Investment Company, Wells and McPherson, to recover the property transferred, for the Wenatchee Heights Orchard Company, claimants, before judgment, consented to return the property does not purge the transaction of fraud. It cannot be considered a voluntary surrender. These claimants are denied the right to have any of the proceeds of the property recovered applied to the satisfaction of their claims until the claims of other creditors are satisfied.

The conclusion of the referee that, upon the present evidence, the trustee should not be directed to comply with the Public Service Commission's order for the increase of the water supply to the present contract holders is affirmed. The penalty imposed by the state law for a failure to comply with the Commission's order cannot be made the basis of a claim in this bankruptcy proceeding. Section 57j of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3444). If such an order were made, and the expense incurred of increasing the water supply, the claims of the contract holders for damages for a shortage of water would still exist. A different question would be presented if the petition was for authority to compromise the unliquidated claims of the contract holders for such damage by complying with the order and increasing the water supply.

The referee's order is modified as indicated above.