In re WENATCHEE HEIGHTS ORCHARD CO.

(District Court, W. D. Washington, N. D. April 3, 1914.)

No. 5025.

1. BANKRUPTCY (§ 272*) — ADMINISTRATION OF ESTATE — EXPENDITURE OF FUNDS BY TRUSTEE.

Where a bankrupt orchard company platted certain irrigable land and sold the same for orchards, agreeing to plow the ground, plant the orchards, cultivate and irrigate the same, and pay taxes until the price was fully paid or the purchasers had taken possession, and before bankruptcy certain judgments were recovered against the bankrupt by purchasers because of a shortage of water, and other purchasers had filed large claims for damages for the same reason, a petition by the trustee, representing that such claims, which were unliquidated, had been filed in excess of $100,000, and stating that in his opinion it would be to the best interests of a large majority of the persons interested in the estate if additional water stock and water rights could be purchased on condition that the unliquidated claims for damages should be released, was insufficient to warrant an order authorizing the expenditure of the funds of the estate to purchase further water rights.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

2. BANKRUPTCY (§ 249*)—ORCHARDS—CULTIVATION BY BANKRUPT—CONTINUANCE BY TRUSTEE.

Where a bankrupt orchard company had contracted to plow, plant, cultivate, and irrigate orchards on tracts sold by it until the purchase price was paid or the purchasers had taken possession, but at the time bankruptcy intervened the bankrupt was the owner of only one of such contracts, its interest in the remainder having been assigned to others, and the trustee, with the consent of all the creditors, did the work necessary for the cultivation of the orchards during 1913, he was not justified in further cultivating the land against the objection of a creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 347; Dec. Dig. § 249.*]

3. BANKRUPTCY (§ 314*)—TAXES—"OWING BY BANKRUPT."

Bankruptcy Act, July 1, 1898, c. 541, § 64a, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), provides that the court shall order the trustee to pay all taxes legally due and owing by the bankrupt in advance of payment

of dividends to creditors, etc. *Held*, that where a bankrupt orchard company transferred contracts for the purchase of orchard tracts, agreeing that, in case of forfeiture by reason of the purchasers' failure to pay the price, the bankrupt would deed the tract or tracts to whom the assignee might elect, the title to the land remained in the bankrupt; and hence, taxes assessed against the land during such period were "owing by the bankrupt," within such section, and payable by the trustee, though according to the state law the remedy for the collection of taxes was enforceable only against the land.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

4. TAXATION (§ 79*)—ASSESSMENT—"OWNER."

Rem. & Bal. Code, Wash. § 9113, provides that, in assessing real estate, the assessor shall make out a complete list of all lands or lots subject to taxation, showing the names of owners if known to him, and, if unknown, shall be so stated. *Held*, that the word "owner" signifies the owner of an estate in possession at the time of assessment, and not a prior owner, or the owner of an estate in expectancy, or of any executory or contingent interest.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 139, 166; Dec. Dig. § 79.*

For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

5. TAXATION (§ 509*)—PAYMENT OF TAXES—MARSHALING ASSETS.

While the marshaling of assets may be decreed between individuals and between governments and public corporations, a state will not be delayed, hindered, or embarrassed in obtaining its revenues thereby nor directed to pursue another to obtain them at the petition of an individual.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 943–945; Dec. Dig. § 509.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Wenatchee Heights Orchard Company. On petition to review orders of the referee with reference to certain claims for damages against the bankrupt for failure to furnish water for irrigation to the holders of certain orchard contracts, and for the payment of taxes. Modified.

Walter Schaffner and Raymond D. Ogden, both of Seattle, Wash., for trustee.

Harry E. Wilson, of Seattle, Wash., for H. P. Johnston and others.

Geo. H. Bailey, of Seattle, Wash., for F. E. Reyes.

H. C. Belt and Corwin S. Shank, both of Seattle, Wash., for S. V. Wells.

McClure & McClure, of Seattle, Wash., for G. Beninghausen.

Alexander Stewart and W. P. McElwain, both of Seattle, for W. P. McIlvain.

Douglas, Lane & Douglas, of Seattle, for James H. Douglas.

CUSHMAN, District Judge. This matter is before the court upon petition to review two orders of the referee. The same proceeding has been considered, in other phases, upon former hearings. 204 Fed. 674, and decision of December 3, 1913, 209 Fed. 84. The bankrupt, upon its organization, acquired some 1,200 acres of land near Wenatchee, Wash., together with shares of stock in an irrigation company. The land was largely platted into 5 and 10 acre tracts, devoted to

the cultivation of orchards, and sold under contracts, a portion of which have been fully paid out and deeds given. A considerable number of the contracts are still outstanding. Under these contracts, the grantor, the bankrupt, was to plow the ground, plant the orchards, cultivate, irrigate, and care for them and pay the taxes until the purchase price was fully paid, when deeds would be given. The purchasers under these contracts complain that less water is being furnished than agreed. After the obtaining of certain judgments for damages, on account of the shortage of water, bankruptcy intervened. A petition was denied by the referee, which asked for the expenditure, by the trustee, of funds of the estate to comply with the order of the Public Service Commission of the State of Washington, requiring the now bankrupt to increase the supply of water for irrigation of the land sold by it. This court heretofore sustained the referee's order, and the cause is now before the Court of Appeals of this circuit.

[1] Upon the former proceeding it was asked that these funds be expended in impounding further water by increasing the height of the dam of the irrigation company, which was urged as the only practicable means of complying with the Commission's order. The present petition asks the referee to authorize the expenditure of the funds of the estate for the purchase of further water rights.

To the present petition the creditor Wells objects. The nature of his interest in and past relations with the bankrupt are disclosed in the court's former opinion. 209 Fed. 84.

The court is asked to distinguish the present matter from that formerly considered, as a justification for which the present petition asks for the purchase of water rights, to be used in effecting the settlement of unliquidated claims for damage on account of the failure of the bankrupt to furnish the amount of water promised under the contracts of sale. To this end, the petition recites:

"Your petitioner further represents that a large number of claims have been filed by the purchasers of property from the said bankrupt, demanding damages for the failure of the bankrupt company to supply sufficient water as provided for by the contracts hereinbefore mentioned, that said claims now filed are unliquidated, and that the amount claimed thereunder is in excess of $100,000.

"Your petitioner further represents that in his opinion the hearing upon the liquidation and allowance of the unliquidated claims for damages hereinbefore referred to will consume a large amount of time, and will entail a large expense upon this estate; that in the opinion of the trustee it would be to the best interests of a large majority of the persons interested in said estate if the additional water stock and water rights hereinabove referred to could be purchased upon the condition that the unliquidated claims for damages should be released; that your petitioner believes that it is essential for a proper administration of said estate that the question as to whether or not your petitioner shall purchase any additional water stock or rights should be speedily determined."

These allegations, even when supplemented by the full record of the proceeding, are clearly insufficient to warrant the making of the order asked. The referee's order denying this petition is approved and sustained.

The further order of which a review is asked, refused, upon the trustee's petition for instructions, to direct him to pay the taxes upon

and cultivate for the season 1914 the lands under sale contracts. The bankrupt sold the tracts of its platted lands under contracts providing for monthly payments over a period of from five to seven years, the bankrupt to care for, cultivate, and irrigate the lands and to pay all taxes and assessments levied thereon, until the lands were paid for, unless the purchaser should elect to take possession thereof. The purchase price of many of the tracts has been fully paid and deeds have been given; but, in a large number of cases, the price has not been fully paid, in which cases the lands have been in the successive possession of the bankrupt, its receiver and the trustee herein, and up to this time have, by them, been cultivated and irrigated, according to the terms of the contracts. During the season 1913 the trustee did this work with the consent of all of the creditors. The creditor Wells objects to its being further done by the trustee. The trustee represents that the costs of such work will equal the crop return accruing to the estate. A large amount of general taxes are due, and in great part delinquent, exceeding, upon the lands covered by the contracts, $3,000. At the time of filing the petition for adjudication, the bankrupt was the owner of only one of these contracts; its interest in the remainder having been assigned to others, who joined in the petition for review.

[2] In the assignment of the contracts, it was provided that the bankrupt should, notwithstanding the assignments, perform all of the conditions of the original contracts, which would include the cultivation, irrigation, and payment of the taxes until full payment for the lands was made. It is clear, under the foregoing conditions, the further cultivation of the lands by the trustee is not justified. The care and cultivation of the tracts by those separately interested therein should not only produce substantially greater material benefits, but be more equitable to all parties interested in the estate.

[3] The statute concerning taxes provides:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court." Section 64a.

The effect of the sale of the contracts and the subsequent assignments is that the bankrupt, having contracted to deed to the several purchasers the platted tracts when the full contract price was paid, thereafter, upon the assignment of its interest under these contracts, agreed, in case of forfeiture under any contract by reason of failure to pay the purchase price of the land, that it would deed such tract, or tracts, to whom the assignee of its interest thereunder might elect, and to that end executed deeds in blank for that purpose, placed in escrow, with power of attorney to complete by filling the blanks. This arrangement clearly leaves the title to the property in the bankrupt.

The taxes are owing by the bankrupt. It is argued that they were not owing, that the lands owed the taxes, and that they were no more owing by the bankrupt than they were by the contract holders, and

the assignees of the bankrupt, entitled to its interest under the contracts. The language of the statute "any taxes owing by the bankrupt," is to be interpreted according to its ordinary meaning when used in this connection. The bankrupt owes these taxes as between the parties, for, under these contracts, it promised and agreed to cultivate the lands and pay the taxes.

The exemptions allowed by law to churches, hospitals, and other similar institutions, as well as to heads of families, to a certain amount, shows that the ownership of property has some effect upon the amount owing, even though a personal judgment may not be recovered against the owner for the taxes.

[4] The Washington law provides that, in assessing real estate, the assessor shall make out a "complete list of all lands or lots subject to taxation, showing the names and [of] owners, if to him known, and if unknown, so stated." Rem. & Bal. Code, § 9113; Pierce's Code 1912, tit. 501, § 115.

"Owner," as used in this connection, signifies the owner of an estate in possession at the time of the assessment, and not a prior owner, or the owner of an estate in expectancy, or any executory or contingent interest. Hopper v. Malleson's Ex'rs, 16 N. J. Eq. (1 C. E. Green) 382, 387. The legal title and right of possession in the lands taxed here at the time of filing the petition were in the bankrupt.

Form should not be allowed to obscure the substance. Property is assessed to the owner. If it is so, and the assessment creates a lien against his property, out of which payment can be compelled, of what use is it to argue that the owner does not owe the tax? As language is ordinarily understood, the owner of property, to whom it is assessed, owes the tax, whether the remedy given for its collection is solely confined to his taxed property or not. If he does not owe the tax, no one does. Hecox v. Teller County, 198 Fed. 634, 117 C. C. A. 338. Even where the remedy for the collection of a debt is entirely taken away, as by the exemption from suit of the sovereign, the statute of limitations, or a discharge in bankruptcy, one may still be said to owe the debt, payment of which cannot be enforced.

[5] The arguments opposing the payment of the taxes as doing violence to equities in favor of the general creditors lose sight of the reason for the statute, which must afford the safest guide to its interpretation. While the marshaling of assets may be decreed between individuals and between governments and public corporations, which are instrumentalities of government, yet a state will not be delayed, hindered, or embarrassed in obtaining its revenues or directed to pursue another to obtain them, at the petition of an individual.

This is but the effect of a general rule of public policy, favoring the state in the collection of its revenues. Summary remedies are provided for its collection, where an individual would have to proceed in limine. The strength of this policy overrides ordinary equities.

The national government, by the foregoing provision of the bankruptcy law, while taking the administration of insolvent estates from the control of the state, recognized its obligation not to impede, by such administration, a state in the collection of its revenues, and to

that end made the positive provision for payment in the above section.

The mandatory language of the section (64a) recognizes a comity that would not require the assertion by the state of its claim for taxes in all cases to warrant the order for their payment; but a suggestion that taxes are owing by one interested in the estate should be sufficient.

"It is the duty of the court, not only to respect this paramount right (to taxes) and to make no order for distribution of assets in custodia legis, except in subordination thereto, but also to make such orders as will compel the receiver to discharge this obligation." 34 Cyc. 347.

"It is not necessary for the public authorities to appear in a court of bankruptcy as ordinary claimants. They have no right in the administration as creditors, and no voice in the selection of trustee, and the liability for taxes is in no way affected by the discharge of the bankrupt. On the other hand, the duty of affirmative action rests upon the court of bankruptcy. It is the duty of the trustee to ascertain from the public records the amount due for taxes and bring the matter to the attention of the court, and thereupon it is the duty of the court to order their payment if there are sufficient funds in the estate for that purpose." In re Kallak (D. C.) 147 Fed. 276, at 277.

"And section 1, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3419), declares that the word 'debt' shall include any debt, demand, or claim provable in bankruptcy. Of course, a tax is provable in bankruptcy. It thus appears that taxes legally due and owing by the bankrupt must be paid before distribution to creditors, and the injunction of section 64 is that the court 'shall order' the trustee to pay them. It seems to be the duty of the court to require such payment, even though no claim for the same shall have been presented in the manner or within the time prescribed by the bankruptcy act for the filing of claims. It is true that section 64 does not, in express words, refer to taxes assessed or becoming due after the institution of bankruptcy proceedings. But it is settled law that the bankrupt's estate is taxable while it is in the hands of the bankrupt's trustees." In re William F. Fisher & Co. (D. C.) 148 Fed. 907, at 912.

The conclusion reached finds further support in the following cases: In re Tilden (D. C.) 91 Fed. 500; City of Waco v. Bryan, 127 Fed. 79, 62 C. C. A. 79; City of Chattanooga v. Hill, 139 Fed. 600, 71 C. C. A. 584, 3 Ann. Cas. 237; In re Baker, 1 Am. Bankr. Rep. 526.

The referee's order is modified to conform to the foregoing.