GILKEN CORPORATION, A MICHIGAN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11212.   Promulgated March 17, 1948.

*Frank W. Donovan, Esq.*, for the petitioner.
*Philip J. Wolf, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The first question is whether petitioner is entitled to deduct certain taxes paid by it upon property, both real and personal, in the city of Detroit. The taxes were paid after July 25, 1940. There is no essential disagreement as to the facts involved. Petitioner received conveyance of the property on June 1, 1940. This was prior to the time when the taxes became a lien on the property on July 15, but it was after the date when, on April 1, 1940, the taxes were assessed and thereby became a debt from the owner of the property. Since under *Magruder* v. *Supplee*, 316 U. S. 394, a vendor who is personally liable for taxes is the person entitled to deduct such taxes, and since the petitioner did not acquire the property until after April 1, 1940, the answer here depends upon whether by virtue of an executory contract purchase, executed on March 2, 1940, the petitioner became the owner and personally responsible for such taxes. Petitioner agrees that it did not, on March 2, 1940, obtain legal title, stating, "Petitioner's only contention in this respect is that it obtained an equitable interest in the premises on that date"; and the petitioner contends, under *Ernst Kern Co.*, 1 T. C. 249, and *Pacific Southwest Realty Co.*, 45 B. T. A. 426 (as well as other cases not necessary of discussion), its rights were such as to support the deduction.

We have examined these cases and many others not cited by either petitioner or respondent, as well as the provisions of the charter of Detroit, the situs of this matter and under which the taxation took place. After a thorough review of the problem, we come to the conclusion that the cases cited by the petitioner do not control here, and that it is not entitled to the deduction sought. The parties stipulate the charter provisions of the city of Detroit. *Inter alia*, the charter provides for assessment of property, the listing thereof in the name of "the owner or occupant thereof"; that the assessors may demand of every person owning or having charge as agent, of any taxable property, a list of such property; that the taxes shall be ratably assessed "to each person named"; that all city taxes "shall become a debt against the owner from the time of the listing of property for assessment by the board of assessors"; that taxes shall be due on July 15 and on that date shall become a lien on the property taxed and that "The owners or occupants or parties in interest of any real estate

assessed hereunder shall be liable to pay such taxes  *  *  *  The owners or persons in possession of any personal property shall pay all taxes assessed thereon"; that in case any person by agreement or otherwise ought to pay such tax, the person in possession who shall pay the same, may recover from the person who ought to have paid; and that all city taxes upon personal property and real estate "shall become a debt against the owner from the time of the listing of the property for assessment  *  *  *."

Although an executory contract for the purchase and sale of the property here involved was executed on March 2, 1940, and although in the *Ernst Kern Co.* and *Pacific Southwest Realty Co.* cases mention is made of beneficial ownership and of equitable title, consideration of the above provisions of the city charter and statute, with cases hereinafter referred to, convinces us that the *Ernst Kern Co.* and *Pacific Southwest Realty Co.* cases are clearly distinguishable, and that the petitioner here was not on April 1, 1940, in such relation to the property as to be personally liable for the taxes thereon, and therefore that it may not deduct same.

26 R. C. L., on the subject of taxation, § 315, p. 358, says:

 *  *  *  The owner of property for the purpose of taxation is the person having legal title or estate thereto, or therein, and not one who by contract or otherwise has a mere equity therein or a right to compel a conveyance of such legal title or estate to himself.  *  *  *

To the same effect see *Tracy* v. *Reed*, 38 Fed. 69.  A mere executory interest in property does not, without more, entitle the holder thereof to be considered in the position of owner of the property for tax purposes.  *In re Wenatchee Heights Orchard Co.*, 212 Fed. 787.  In *Sloan Shipyards Construction Co.* v. *Thurston Co.*, 111 Wash. 361; 190 Pac. 1015, there was involved a contract to sell property to the Shipping Board, it to become owner upon payment.  It was held that the vendor was the person liable for taxes.  *Steiff* v. *Tait*, 26 Fed. (2d) 489; affd., 31 Fed. (2d) 1020, is to the effect that one having legal title is ordinarily liable for the payment of taxes.  See also *Barde Steel Products Corporation*, 14 B. T. A. 209; *Brown Lumber Co.*, 9 B. T. A. 719; *Old Farmers Oil Co.*, 12 B. T. A. 203.  It will be noted that the property here involved had not passed to the possession of the proposed vendee on April 1, 1940.  Assuming, without deciding, that a vendee in possession has an equitable interest or even an equitable title, in our opinion the mere executory agreement without possession, here involved, is not sufficient to satisfy the statute imposing the tax upon the owner and occupant.  We have said, in *Eugene W. Small*, 27 B. T. A. 1219, citing authorities, that in order to be entitled to deduction for payment of taxes, petitioner must show not only the payment, but that "the taxes were imposed upon him by the taxing authority."  It is clear, we think

that though the Detroit charter itself imposed a tax upon the owner and occupant, the petitioner was not, on April 1, 1940, the occupant of the premises, but had a mere right to purchase, not amounting to ownership for the present purpose of taxation. *Gamble* v. *Ross*, 88 Mich. 315 (holding that the holder of an executory contract without possession had no right except to purchase certain land within a given time, for a certain sum, i. e., an equitable interest entitling him to legal title upon performance of conditions). In *North Texas Lumber Co.*, 7 B. T. A. 1193, we held that a contract to sell property does not pass title to the property, and in the absence of delivery of possession of the property does not pass the title or permit the vendor to accrue the purchase price for tax purposes.

We note that in *Pacific Southwest Realty Co.* the vendee was in possession of the property. In the *Ernst Kern Co.* case, the statement relied upon by the petitioner as to equitable title vesting is based upon the fact that the petitioner purchased "under a land contract," from which it is probable, from the ordinary connotation of that expression, that the vendee was in possession. The case, of course, decides that the personal liability of the vendor on April 1, in Michigan, required denial of deduction by the vendee. The mere mention of equitable title is, under such circumstances, of little or no weight for petitioner here.

We can not find in the facts here involved, that is to say, a mere agreement of purchase without possession delivered, and subject to perfection of title (including removal of a lease), an interest approaching that which under the Detroit charter would impose personal liability for the tax. In *J. T. Wurtsbaugh*, 8 T. C. 183, we held that profit from the sale of timber and lease of land was not realized in 1940, where at the end of that year there existed only an executory agreement to sell at a prescribed price, the prospective form of conveyance had been in general accepted and the abstract of title had been found as a whole sufficient, but where it was not until 1941 that title was finally approved, the deed of conveyance was signed and the consideration passed and the right of possession passed. We said:

\* \* \* Under these circumstances, we do not think the sale constituted a closed transaction or that either the benefits or the burdens of ownership passed to the vendee in 1940 \* \* \*

So here we think that neither the benefits nor the burdens of ownership had passed to the petitioner, the vendee, prior to April 1, 1940, within the intendment of the Michigan law, or the general law of vendor and purchaser, and that therefore the deduction for taxes paid was properly denied. In arriving at this conclusion, let it be noted that we have not considered the fact that the petitioner offered no proof that a condition provided by the contract (in substance that the beneficiaries

of the trust which owned the property must give their approval), had been complied with.

The petitioner filed a motion, after filing of respondent's brief, raising the point, for the first time, that it be allowed to take a deposition to make such proof. The motion has been denied, for the reason that upon consideration of the whole case, we have, as above set forth, concluded that, regardless of the performance of such condition, the petitioner was not the owner on March 2, 1940, or April 1, 1940. Nor have we considered the apparently inadvertent failure to prove that modifications made on March 2, 1940, to the offer to purchase of February 27, 1940, were in fact accepted by the petitioner on March 2, or at any time prior to April 1. On brief, petitioner states that the endorsement on the letter of March 2, 1940, accepting the modification by petitioner, was executed on March 2, but there is no proof whatever as to the date when this was done. The only proof is the letter of March 2, from the trustee, stating the modifications of petitioner's offer of February 27, with an endorsement at the bottom thereof of acceptance of the modifications by the petitioner; and by deposition the evidence that the acceptance of modifications (on the letter of March 2) was pursuant to the instructions of one Stevens, petitioner's representative. Nevertheless, under the above conclusions, the date of acceptance of the modifications is immaterial, since, in any event, in our opinion, petitioner was not the owner of the property prior to April 1.

There remains for our consideration the question whether the $3,200 received on July 1, 1940, and the $5,000 received on January 3, 1941, are taxable to the petitioner, when received, as the respondent contends, or in the petitioner's year ended July 31, 1942, when applied on the last five months' rent, by the agreement of April 29, 1942, as contended by the petitioner. The answer depends upon whether the payments were for rent, as respondent argues. There are various cases involving the general situation and problem here. Thus it is established that where payments are made merely as rent and made at the beginning of a lease, though for the final period thereof, they are, there being no other conditions, taxable as income at the time they are received. *Renwick* v. *United States*, 87 Fed. (2d) 123; *Astor Holding Co.* v. *Commissioner*, 135 Fed. (2d) 47; *Commissioner* v. *Lyon*, 97 Fed. (2d) 70. Another line of cases is to the effect that if money is merely deposited by the lessee with the lessor as security for the performance by the lessee of the covenants and provisions of the lease, with no present right or claim of full ownership by the lessor, the payment is not taxable to the lessor at the time of receipt, but when the happening of some event causes such deposit to become his property. *Warren Service Corporation* v. *Commissioner*, 110 Fed. (2d) 723; *Clinton Hotel*

*Realty Corporation* v. *Commissioner*, 128 Fed. (2d) 968. We have here a case where there are not only provisions as to application of payment received at the beginning (and later at amendment) of the lease upon rents for the final period thereof, but also provisions with reference to the amounts deposited to be held as security for performance of lessee's obligations; and, to complicate the matter further, there is provision for application of an amount equal to the payments upon an agreed purchase price, if an option granted in the lease is exercised.

In substance, the respondent contends that the payments fall within the rule announced in *Hirsch Improvement Co.* v. *Commissioner*, 143 Fed. (2d) 920; certiorari denied, 323 U. S. 750; and *Edwin B. DeGolia*, 40 B. T. A. 845, which cases, in effect, lay down the rule that, even though money paid upon the making of a lease is to be held for security for the performance of the conditions of the lease, if it is also provided that the payment should be applied as rent for the final period of the lease, and the circumstances under which it was to be repaid might never occur, or there was no provision for repayment to the lessee, then it is to be considered as income when received. In the *Hirsch Improvement Co.* case, it was to be applied as rent for the last year, except that upon default by the lessee, under the conditions of the lease, it could be retained for that reason; and the lessor should repay proportionately, in case of destruction of the property; while in the *DeGolia* case there was not even a contingent liability to return the money to the lessee (so far as shown), though the lease had recited that it was deposited to secure performance by the lessee, and in case of faithful performance, upon the last ten months' rent due.

The petitioner, on the other hand, affirms that the money was received as security for performance by the lessee, also as option payments to be applied against purchase price, if the option were exercised, and the lessee had fully performed under the lease, and would be applied as rent on the final period of the lease only if the lessee had not defaulted under the terms and conditions of the lease, and the option had not been exercised, so that the payments may not be considered rent. Petitioner contends also, in effect, that interest was to be paid upon the deposits (indicating them to be such) because in case the lessee exercised the option, the purchase price was to be reduced by $300 a month, and under the amendment of January 3, 1941, if the lessee elected not to exercise the option, the rental from July 1, 1943, should be reduced from $1,600 to $1,500 per month. We find nothing whatever in the record to justify the contention as to interest. No mention of interest on the money deposited is anywhere made in the lease. The arrangement has no characteristic of a loan. The petitioner argues that, under *Clinton Hotel Realty Corporation* v. *Com-*

*missioner, supra,* and *Warren Service Corporation* v. *Commissioner,* *supra,* the deposits bore interest when received. The *Clinton Hotel* case, however, is clearly distinguishable on the point of interest, because there the lessor was definitely to account for $1,000 per year as interest, whereas as above stated no showing is made here as to interest being paid upon the deposits. In the *Clinton Hotel* case the court emphasizes the element of interest. The *Warren Service* case is likewise inapplicable as to the interest element. The petitioner, in fact, suggests no reason why it is applicable thereto, and examination discloses that interest was not there to be paid upon the money paid to the lessor as security for lessee's performance.

The *Clinton Hotel* and *Warren Service* cases are, of course, as above indicated, authoritative on the general proposition that money deposited with the lessor as mere security is not at that time income. However, our problem here, in that regard, is to determine whether the security deposit or the payment of rent, is the determinative factor. After examination of all helpful authorities, we have concluded that under the *Hirsch Improvement* and *DeGolia* cases, the payments were payments of rent, rather than mere deposits for security-of lessee's performance. The payments were subject to petitioner's unrestrained control. *Brown* v. *Helvering*, 291 U. S. 193. They were to be held as security "and shall apply upon the last two months * * * rent" (as to the $3,200)—the expression being twice used, though in slightly different language, in the original lease. The $5,000 later paid was "to be applied along with the Three Thousand Two Hundred ($3,200.00) Dollars upon the last five months of the last year's rent accruing under the terms of said lease," that language appearing in the "THEREFORE" paragraph where the parties "express their said intention and agreement," and the reference to additional security and payment upon option appearing only in the "WHEREAS" clause. The *Hirsch Improvement* and *DeGolia* cases both considered the situation here presented—provisions that payments be applied both on security for performance, and upon rent. We conclude that, in that respect, the rent payment element controls here.

What, however, of the provision here appearing, but not found in those cases, or in those relied on by the petitioner, that the payments were to be applied on purchase price if the option should be exercised? Are the payments rent, as opposed to purchase price? *Virginia Iron, Coal & Coke Co.* v. *Commissioner*, 99 Fed. (2d) 919; certiorari denied, 307 U. S. 630 (affirming 37 B. T. A. 195), relied upon by the petitioner, is not helpful, for it involved merely an option to buy bonds, and money paid therefor, with no question of application of the money as rents. Nor is *Edward E. Haverstick*, 13 B. T. A. 837, of assistance, for there no provision for application of rents upon option price

appears. Such cases as *Indian Creek Coal & Coke Co.*, 23 B. T. A. 950, and *Rotorite Corporation*, 40 B. T. A. 1304; reversed, 117 Fed. (2d) 245, only approach analogy to this one; for there in both cases though the lease provided that royalties would be applied upon purchase price in case of purchase under option, and we held that the payments retained their characteristic as royalties, current payments; that is, payments made for the periods when made were there involved. Here, the payments were to be applied as rentals for the closing period of the lease. In one sense, if the option was earlier exercised, they would not be rents at all, but payments upon purchase price. In *Goldfields of America, Ltd.*, 44 B. T. A. 200, we held payments made as minimum royalties before production under a contract for the optional purchase and operation of mines, belonging at once to the vendor and to be applied to the purchase price, were not deductible as ordinary and necessary business expense. We said that the payment "remains part of the purchase price until the taxpayer decides not to exercise its option to purchase or terminate the contract"; also, "When made, the payments are primarily part of the purchase price; the possibility of their being royalties is contingent upon petitioner's future election not to acquire the property. The conception of the contract as one of sale and purchase pervades its entire duration." The case is, of course, somewhat distinguishable in fact, and in question presented, from this matter.

The solution of this question requires that we view the lease and the modifications thereof in their entirety, *Hirsch Improvement Co. v. Commissioner, supra;* and it depends upon all of the facts involved in the lease and modifications, *Astor Holding Co. v. Commissioner, supra.*

After study of every case, we think, covering this question, which is novel and not heretofore squarely presented, we have come to the conclusion that the payments should be regarded as rent when received, notwithstanding the existence of an option to purchase and applicability of payments on purchase price. Under the cases, we should ascertain, if possible, the primary purpose of the payments, and here we think they were, in line with the thought expressed in the *Hirsch Improvement Co.* and *DeGolia* cases (though they are not controlling and are distinguishable to some extent on the facts) primarily intended as rent, and that the applicability upon purchase price is so secondary as not to require a different conclusion. Though it is true that if the option was exercised and the property purchased the amounts would not have been utilized as rent, the same could be said in the *DeGolia* and *Hirsch Improvement Co.* cases with reference to application upon broken covenants in the lease, for if covenants had been broken the payments would have first been utilized to their re-

pair. In the *Hirsch Improvement* case, after stating that the question is whether the payment is basically rent in the year received, the court stated, "That it was rent for a future year would be unimportant." Though there no option for purchase was involved, nevertheless the statement is not without weight, since we are endeavoring here to ascertain the practical effect of the particular lease here involved by determining the primary purpose involved. We think that primary purpose was the payment of rent. It will be noted that the lease was for a period of ten years. The option, however, must be exercised within a period of three years, or indeed a shorter term if the lease should be forfeited prior to that time. Obviously, therefore, the option was the less important consideration. It will be noted also that the payments were applicable upon the stipulated purchase price only in case the lessee had faithfully performed all the conditions of the lease. Since in the *DeGolia* and *Hirsch Improvement* cases the payments were held rent, though they were first applicable as security for improvements of the conditions of the lease, the interposition here of an option exercisable only after faithful performance of such conditions does not seem to require a different conclusion than in those cases expressed. That the payments here were primarily for rent, within the general purview of those cases, is clear, for they were made for security and for rent, in the terms of the original lease, while in the first amendment the intention and agreement are stated to be that the $5,000 shall be applied upon the last five months of the last year's rent, though in the "Whereas" clause the $5,000 is referred to as additional security and as payment upon the option to purchase, if exercised; and in the final modification we find that the "amount heretofore deposited with the Lessor as security * * *, shall be applied upon and used for the payment of the rent for the last five months of the term as shortened herein as and when the rent becomes due for said months." We note, also, that the option terminates upon forfeiture of the lease. The lease was forfeitable for nonpayment of rent for one month.

The option is in the nature of a condition subsequent; that is, if the lease is fully performed and if the option is exercised, then the moneys paid, or rather their equivalent, shall be deductible from the purchase price. In strict fact, the amounts paid are nowhere by the lease or its modifications required to be repaid to the lessee in case the option is exercised, or under any other circumstances, but only the equivalent thereof is to be applied upon purchase price if the option is exercised. We consider the difference of little weight, yet it is not altogether to be overlooked as an indication that the payments were made under the lease, and only their equivalent entered into the matter of option. We think they were so paid, and, as we held in *Indian*

*Creek Coal & Coke Co., supra*, they did not lose their characterization because possibly eventually to be applied upon purchase price. Though there current royalties were involved, we think, under all of the facts in this case, that the principle is here applicable. *Rotorite Corporation, supra*, was reversed and royalty payments were held to be purchase price, but the grounds for the reversal were, in substance, that the year of royalty payments involved was the year in which the option to purchase was exercised; that the major portion of the sum was paid with the taxpayer's full knowledge that the manufacturer would exercise the option; that at the very first of that year it was certain that the option would be exercised; and that the Commissioner had treated the payments as advances on purchase price. Here, the option apparently never was exercised; at least no showing thereof is made, and during the taxable years nothing indicates that it was likely to be exercised. The court stated that, "Taxation * * * is eminently practical"; that it must look through form to substance of the transaction, and concluded that the payments were purchase money. So here, equally as a practical matter, we think that the option element does not determine the nature of the payments, and that in intent and fact they were rent.

We conclude and hold that the $3,200 and the $5,000 were taxable when received.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

BLACK, *J.*, dissenting: I dissent from the majority opinion wherein it holds that $3,200 deposited with petitioner by its lessee on July 10, 1940, at the time the lease was executed and $5,000 deposited with petitioner by its lessee on January 3, 1941, when the lease was amended, were income to the petitioner in the years when such amounts were so deposited. The majority bases its holding upon the proposition that these amounts were received by petitioner as advanced rentals.

Of course, if these payments were in fact received as advanced rentals and could definitely be so identified, then there would be no doubt that petitioner would be taxable thereon in the year of receipt. *Astor Holding Co.* v. *Commissioner*, 135 Fed. (2d) 47. And this would be true even though the contract of lease provides that such sums shall act as security for the performance of the lease covenants. *Hirsch Improvement Co.* v. *Commissioner*, 143 Fed. (2d) 920. But I do not think this rule applies where, as here, the lease contract provides:

* * * that at any time within a period of three (3) years after the date of this lease, the Lessee shall have the option of purchasing the said premises * * *. Lessor further agrees, provided the Lessee has faithfully performed all

the conditions of said lease, and provided Lessee desires to exercise the option to purchase said premises as herein provided, to give credit and allow Lessee as payment upon the stipulated purchase price * * *, the sum of THREE THOUSAND TWO HUNDRED ($3,200.00) DOLLARS, which represents a sum equal to that paid by Lessee as security and for the last two months' rental of said term; * * *

The $5,000 deposited with petitioner on January 3, 1941, was deposited under similar terms and conditions. Thus the two payments are in the same category. The majority opinion, after discussing certain cases which have dealt with this general subject, poses the following question as to these two payments: "Are the payments rent as opposed to purchase price?" It then goes on to hold that such payments were rents. In my opinion the question could not be answered during the years which we have before us.

Petitioner did not know and could not know whether it would ultimately have to apply these payments as rentals for the last five months of the lease or whether it would have to apply them as payments of part of the purchase price in case the lessee exercised its option to purchase within three years from the date of the lease. Until petitioner knew definitely how it would have to apply such payments, it could not determine its taxability thereon. Such an option to purchase is not a probability so remote as to require no consideration in determining when the amounts received should be taken into income. Such view it seems to me is in harmony with our decision in *Virginia Iron Coal & Coke Co.*, 37 B. T. A. 195; affd. (C. C. A., 4th Cir.), 99 Fed. (2d) 919. In that case we held that payments received in 1930 and 1931 under an option to purchase stock or land and mineral rights which were to be applied upon the purchase price in case the option was exercised, but which were to be retained in case the option was not exercised, were income in the year in which the option was surrendered.

In holding against the contention of the taxpayer that the payments, if taxable at all, were taxable in the years when received under the option, we said:

The petitioner argues that the payments were either income when received, or were a return of capital which should have been irrevocably applied as a recovery of a part of the basis of the property, so that in neither event would the payments represent income in 1933. Neither of these arguments offers a proper solution of this case. It was impossible to tell in 1930 and 1931, when the payments were received, whether they would ultimately represent income to the petitioner or a return of capital. They were to be applied against the purchase price in case of the exercise of the option. Had the option been exercised, they would have represented a return of capital, that is, a recovery of a part of the basis for gain or loss which the property had in the hands of the seller. In that event they would not have been income and their return as income when received would have been improper. Cf. *Higgins Estate, Inc.*, 30 B. T. A. 814. * * *

In *Virginia Iron Coal & Coke Co.* v. *Commissioner, supra*, the court, in affirming our decision, said:

> The year 1933 was the year in which the Texas Company notified the taxpayer that it surrendered all rights under the option and was the year in which the tax attached to the payments. The situation is in no way affected by the fact that the money became the property of the petitioner when received.

It is undoubtedly true that the $8,200 here in controversy became the property of petitioner in the years 1940 and 1941 when it was received, but under the principles approved by us and the Circuit Court of Appeals for the Fourth Circuit in the *Virginia Iron Coal & Coke Co.* case, such sums did not become taxable income to petitioner until in the year when it was definitely ascertained that such payments would not be used as a part of the purchase price of the leased property under the option to purchase it. Clearly, this did not happen in either of the taxable years which we have before us. Therefore, I dissent from the majority opinion, which taxes petitioner on these amounts in the years when they were received.

ARUNDELL and MURDOCK, *JJ.*, agree with this dissent.