JUDSON MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9926. Promulgated July 14, 1948.

*Percy W. Phillips, Esq.*, for the petitioner.
*B. D. Hathcock, Esq.*, for the respondent.

26

OPINION.

JOHNSON, *Judge*: (1) Did the Commissioner err in disallowing the deduction of $30,786.78 claimed by petitioner as rentals paid for the use of machinery in its business?

The Commissioner's disallowance was based on the ground that the petitioner, through these payments, acquired an equity in the property. Section 23 (a) (1) (A) of the Internal Revenue Code, pertaining to deductions of expenses in a trade or business, authorizes deductions for rent in this language:

\* \* \* and rentals or other payments required to be. made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

Under the evidence we think that petitioner, by the payments it made on the machinery under the terms of the three contracts, did acquire an equity in the property, and that respondent's contention should be sustained.

*Holeproof Hosiery Co.*, 11 B. T. A. 547, relied upon by the respondent, is in point. While not identically alike, the facts are strikingly similar and the principle involved is the same. There also the taxpayer was engaged in manufacturing, and for use in its business it acquired machinery under "four lease agreements" wherein it was obligated to pay monthly installments for two and one-half years, aggregating $24,000, at which time it could pay $5,674 additional, or 23 per cent in addition to the sums theretofore paid, and become the owner of the machinery.

Here, under the Atwood contract, petitioner was obligated to pay in five years, by monthly installments, the total sum of $51,915, whereupon it had the option of paying an additional sum of $6,198.87, or 12 per cent additional to the sums theretofore paid, and become the owner of the machinery. In the Crompton & Knowles agreement the monthly payments covered a period of four and one-half years, aggregating $125,000, when it had the option of paying an additional sum of $12,850, or 11 per cent additional, and become the owner, while in the Draper contract the term of payment was seven years, when the monthly payments would aggregate $184,644, and by paying $18,950, or 9 per cent additional, it could become the owner.

In *Holeproof Hosiery Co., supra*, the life of the machines was not shown by the evidence, but they were still in use 5 years after the taxable year. Here it appears that the life of the machines, except for obsolescence, was 12 years, according to testimony of petitioner's

manager, and was determined to be 16 years, and at the date of the hearing in this proceeding (more than 7 years after the taxable year) all machines were still in use, in good condition, and evidently giving good service, since at that time the mill, with 2,100 employees, was producing 60,000,000 yards of goods a year, compared with 19,000,000 yards produced by 1,900 employees prior to the installation of the machinery.

In the *Holeproof* case it was said:

    \*   \*   \*   We do not know at what amount the machines could be rented on the open market, but we know that the total amounts to be paid under the lease agreements before the title to the machines was to pass to the petitioner exceeded but slightly the stated value of the machines, and it is inconceivable that the petitioner was not acquiring something of value, that is, a certain equity in the machines, with each payment made in accordance with the agreement.   \*   \*   \*

The same can be said of the facts in the instant case, and we accordingly hold that at the end of the taxable year involved "petitioner had a substantial equity in these machines," and under the quoted section of the code rental payments therefor are not deductible. In support of this holding see also *Alexander W. Smith, Jr., Executor*, 20 B. T. A. 27, and *Helser Machine & Marine Works, Inc.*, 39 B. T. A. 644.

We can not agree with petitioner that this case is distinguishable from the *Holeproof* case because (a) the taxpayer there was required to pay rentals for a shorter period (two and one-half years) ; (b) the Holeproof contract contained no right to extend the lease for any period after the expiration of the two and one-half years, and (c) that the evidence here manifested more clearly an intention on the part of petitioner to lease or rent, rather than to buy. As to (a) and (b), these are details differing from the instant case, but they do not change or affect the essential facts or the underlying principle inherent in both cases. As to (c) it matters not whether the contract was in the form of a lease or a conditional sale, or what was the intention of the parties; if, under the terms of the contracts by which the payments were made, the petitioner acquired an equity in the machinery, which we so find, the payments would not be deductible, due to the limitation prescribed in the code.

Neither do we discern the applicability of *Gilken Corporation*, 10 T. C. 445, cited by petitioner. The question there was whether payments received were taxable income as rent in the current year, or whether, under the option, they might be later applied as part of the purchase price, and become taxable then. Here the question is

not one of payments received, but of deductions claimed for rent paid which are not deductible because of the equity acquired.

The explanation or break-down of the consideration to be paid, contained in the letters from the manufacturing vendors and computations attached thereto, showing what part of the payments covered the price or value of the machines and what part covered interest, further strengthens our conviction that the petitioner was acquiring, not merely the right to use the machinery, but was either taking title to it, or, in any event, under the payments did acquire a substantial equity in its ownership. Under *Helser Machine & Marine Works, supra,* "a right to take title to the property" is of itself sufficient to defeat petitioner's contention. Undoubtedly such a right is here shown.

The respondent did not err in disallowing the deductions claimed for rent.

(2) In the alternative, petitioner contends that, if not entitled to deduction for rent, it is entitled to a deduction for interest paid. Specifically, it asserts that "the payments accrued or paid by the petitioner during the taxable year on account of said machinery agreements include interest in the amount of $6,106.55," which is deductible from its gross income under section 23 (b) of the code.

The evidence sustains this contention. While the contracts were silent as to interest, the letters from the manufacturing vendors and attached computation of figures relating to each of the three contracts disclosed how the total consideration was arrived at in each and specified in dollars and cents what payments under each of the contracts were principal and what payments thereunder constituted interest. The sums payable as interest within the taxable year under the contracts are therein disclosed. These letters and computations were used in the negotiation of the contracts, and they formed the basis on which the respective manufacturing vendors agreed to deliver the equipment to petitioner and on which petitioner agreed to receive and pay for same, and based thereon the contracts were executed. The real consideration for each contract is shown therein.

The omission from the contracts of any stipulation concerning interest did not preclude petitioner from making this extraneous proof, nor does it prevent us from considering it.

As a general rule the recitals of a written instrument as to the consideration are not conclusive, and it is always competent to inquire into the consideration and show by parol or other extrinsic evidence what the real consideration was. [32 Corpus Juris Secundum, section 948, and authorities there cited of Federal

courts and from many state courts, including two from South Carolina, viz: *Halsey* v. *Minnesota-South Carolina Land & Timber Co.*, 177 S. E. 29; *Woodrow* v. *Frederick*, 131 S. E. 598.]

The essential facts here are the same as those in *Hudson-Duncan & Co.*, 36 B. T. A. 554, relied upon by petitioner. There, as here, the payments made were lump sum payments, based upon a written contract which did not apportion or allocate payments made thereunder between principal and interest. There, as here, in negotiating the written contract, it was shown by extrinsic evidence that the amount stated in the contract was not all principal, but was the aggregate of the two items of principal and interest. Satisfactory proof having been made that under the agreement of the parties to the contract a definite part of each payment was in fact interest, such amounts paid within the calendar year were held deductible from the taxpayer's gross income. The facts here warrant the same conclusion.

The fact that the contract in the *Hudson-Duncan* case contained a recital "that the total purchase price includes interest," while in the instant case the contracts are completely silent as to interest, does not require a different result. Recitals in a written contract as to consideration are not conclusive. The determination of the issue rests upon the evidence as a whole.

In *Elliott Paint & Varnish Co.*, 44 B. T. A. 241, cited by respondent, the written contract stipulated that the payments in question were "without interest," and yet we held that parol evidence was admissible to show the true agreement of the parties as to whether interest was included, although it would tend to vary the terms of the written contract. However, it was there held that the evidence as a whole did not establish that the actual agreement of the parties as to interest was different from that expressed in the written contract, and hence the claim for interest deduction was denied. The opinion analyzes the evidence and points out its insufficiency to establish outside the contract an agreement between the parties that interest was intended to be paid. Referring to the extrinsic evidence by which the taxpayer sought to make such proof, the opinion, after stating there was no evidence that the value of the property was $27,500 and that the seller had in fact rejected an offer of that amount in cash, said:

* * * The parties, in agreeing upon the purchase price of $40,000, as set forth in their written contract, used some kind of a rough calculation in which interest on $27,500, at some rate not shown in the record and for a period of years not shown in the record, was computed and added to $27,500 to arrive at a figure which was approximately, but not exactly, $40,000. The only actual

figures contained in the record pertaining to any such computation are on a piece of paper which the seller had in her hands and which had been furnished her by an adviser who was with her at the time the sale was made. \* \* \*

Clearly the terms of a written contract could not have been impeached by such vague and uncertain evidence.

In the instant case, there is an absence of vagueness and uncertainty. The record here, as we have pointed out, shows that, as part of the consideration, a definite understanding and agreement was had between the parties to the contracts as to what portion of the payments constituted interest. The facts here are clearly distinguishable. Petitioner's claim for deduction of interest paid is allowed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: The petitioner is not entitled to any deduction for interest. The machinery manufacturers computed imaginary interest in arriving at the amounts they would demand of the petitioner for the use of the machines, but the petitioner owed no debt, did not agree to pay interest and paid no interest.

LEECH and DISNEY, *JJ.*, agree with this dissent.

---

DISNEY, *J.*, dissenting: I can not agree with the majority that the monthly amounts paid by the petitioner were not deductible as rentals. In my view, the fact that there were options to purchase at the end of the rental period involved is given inordinate weight. The question is, What was the primary purpose of the agreement? *Gilken Corporation*, 10 T. C. 445; *Indian Creek Coal & Coke Co.*, 23 B. T. A. 950; *Hirsch Improvement Co.* v. *Commissioner*, 143 Fed. (2d) 912. I think the primary purpose was rental, not passage of title to the property. It should be noticed that we have here a question of deduction in 1940, the year the contracts were initiated, and that in two of the three leases the terms of the leases expired without exercise of the options, though they were exercised later. In the Atwood agreement it was not until the third rental period, i. e., after two extensions, that the option was exercised, while in the Crompton & Knowles contract exercise was in the first extension. Is the mere possibility of such exercise of option during the initial lease periods to determine this question, though, in fact, the lease periods had expired (in the two cases)? Note that nothing in the contracts gave a right to purchase the property during extended periods of rental, but the exercise was to be at the end of the original period. Thus, we see that in the two

cases the petitioner lost its right to the option at the end of the primary term. To hold, nevertheless, that such option gave equitable right in the property seems to me to lack logic. In *Rotorite Corporation* v. *Commissioner*, 117 Fed. (2d) 245, the Circuit Court reversed because it considered that "no one could doubt but that Sunbeam's 1935 payments were made on the expectation that it would soon make its election and thus give to all of its payments purchase money status." Surely the same can not be said here, where the exercise of option was, in fact, never (in two cases) availed of during the primary lease, but, in fact, the right thereto was forfeited. In *McEwen* v. *Totten*, 164 Fed. 837, property was, early in 1906, rented for about eight months at $100 a month, purchaseable for $2,100 on January 1, 1907. The payments of $100 a month continued for several months in 1907. The court considered this as indication that the contract did not pass title.

Moreover, this is not a case where the monthly rentals were to be applied on purchase, with no additional payment or only a nominal one, as in cases ruled on. In *Alexander W. Smith, Jr., Executor*, 20 B. T. A. 27, $10 was payable in addition to the periodic payments, and in *Helser Machine & Marine Works, Inc.*, 39 B. T. A. 644, title was to pass when the periodic payments were all made. Here a very substantial amount, perhaps all the property was then worth, was to be paid under the option. Also, there was here no valuation of the property in the original contract, such as the setting of the $26,650 total value in *Holeproof Hosiery Co.*, 11 B. T. A. 547.

I note too that in the Atwood agreement the lessee was responsible for damages, and that if the lessee is declared insolvent, the lessor may take possession. The terms and conditions of the Crompton & Knowles agreement are said to be substantially the same, and the Draper agreement is referred to as similar to that with Crompton & Knowles. In my view, such provisions for collection of damages and possession of the property on insolvency are contrary to ideas of passage of title. If the lessor can take the property against a trustee in bankruptcy, can title for the present purpose be considered passed? I think not. In *Gotthold* v. *Crompton & Knowles Loom Works*, 4 Fed. (2d) 50, there was lease of looms with agreement that if rent was paid lessor was to sell at a nominal stipulated sum. It was held that the lessor was entitled, upon lessee's bankruptcy, to return of looms, or payment therefor. Collier on Bankruptcy, 3d Ed., p. 1222, says on the subject:

1505. *Property leased with privilege of purchase.*—The question frequently arises whether title passes to the purchaser under a contract whereby the pur-

chaser agrees to pay a stipulated amount as rental for the article sold, such amount to be applied upon the purchase price. It is generally held that if the agreement provides for the surrender of the property at the expiration of a designated term, or the purchase of such article at such time, it does not operate as a conditional sale but is a bailment and therefore the "lessor" may reclaim the article upon the bankruptcy of the lessee, prior to the exercise of the option to purchase. * * *

See also *Jacquard Knitting Machine Co.* v. *Vennell*, 59 Fed. (2d) 496, holding that where there was agreement for rentals and for purchase, but the property was to be returned to owner in case of bankruptcy, there was bailment and future sale.

I would, for the above reasons, allow the deduction of payments and I, therefore, respectfully dissent.