LINCOLN D. GODSHALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16511. Promulgated October 31, 1949.

*Harrison Harkins, Esq.*, for the petitioner.
*R. E. Maiden, Jr., Esq.*, for the respondent.

683

OPINION.

JOHNSON, *Judge*: Although the instrument defining the parties' rights in the mining claims is styled a lease and the transferee's payments are called rentals or royalties, petitioner argues that in fact he made a sale of his interests and that the transaction should be classed for tax purposes according to the meaning and intent of the instrument as a whole. While the scope of this argument would cover the issue in the case of normal transactions, it falls short here because a conveyance or assignment of minerals and mineral rights for Federal tax purposes differs from similar transactions involving other kinds of property. Even in the case of a technical sale, consummated by passage of title, the seller is deemed to have "maintained a capital investment or economic interest" in the mineral property transferred if all or part of the price is payable out of the minerals produced or the net proceeds of production. *Burton-Sutton Oil Co.* v. *Commissioner*, 328 U. S. 25. So holding in respect of oil-bearing properties, the Supreme Court expressly rejected the argument:

\* \* \* that ownership of a royalty or other economic interest in addition to the right to net profits is essential to make the possessor of a right to a share of the net profit the owner of an economic interest in the oil in place. \* \* \*

It reasoned, on the contrary, that:

\* \* \* the form of the instrument of transfer and its effect on the title to the oil under local law are not decisive \* \* \*, there must be a determination under federal tax law as to "whether the transferor has made an absolute sale or had retained" such economic interest \* \* \*. *Kirby Petroleum Co.* v. *Commissioner, supra* [326 U. S. 595]. \* \* \* we have construed an assignment of oil leases for cash and a deferred payment, "payable out of oil only, if, as, and when produced", as the reservation of an economic interest in the oil—not a sale. *Thomas* v. *Perkins*, 301 U. S. 655.

The same rules are applicable to ore-bearing properties. *Burnet* v. *Harmel*, 287 U. S. 103. In determining tax incidence the essential test is thus whether or not petitioner held an economic interest in the minerals in place. If he did, the amounts paid him out of the proceeds of their production constitute ordinary taxable income, and he is entitled to a deduction for depletion.

In our opinion petitioner and his associates clearly reserved an economic interest in the ore by their instrument of transfer. They recited a consideration of $139,000 as total "rental" payable, but, apart from the initial deposit of $11,000, none of this "rental" was a fixed liability. By subsequent provisions of the contract it was to be satisfied, if at all, by specified "royalties" on the ores actually mined, and

if ore production should prove to be small or unprofitable, Shoshone was free to terminate the contract without further obligation than the payment of "rental" or "royalties" on such tons as it had extracted at that time. Petitioner obviously retained rights to payments from ore or its proceeds, and his future installments of the recited "rental" were wholly contingent on what Shoshone could or would produce. Unlike the assignor in *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372, he did not at the date of the contract convey all right, title, and interest in the properties to Shoshone. Furthermore, there the consideration of $2,000,000 was "to be paid without reference to and without being in any manner based upon the production of oil from the properties conveyed," whereas here all of the consideration except the initial sum of $11,000 under the contract was payable out of the ores produced from the properties involved.

Petitioner relies primarily on *Rotorite Corporation* v. *Commissioner* (C. C. A., 7th Cir.), 117 Fed. (2d) 245, wherein payments made as royalties for use of a patent were deemed part of the purchase price of the patent because applicable to it in case the licensee should exercise an option to buy. The court took the view that in the taxable year royalty payments were so large that exercise of the option was to be inferred. But the *Rotorite* case does not involve mineral properties on which the royalties come from sale of ore. It is this right to a part of the property itself which gives rise to the view of an economic interest retained by the assignor and which characterizes the payments as royalties, not sale proceeds. Title to the ore is not decisive, *Burton-Sutton Oil Co.* v. *Commissioner, supra*, and it is hence immaterial when a sale was consummated in the ordinary sense, or when the option to purchase was exercised. See G. C. M. 23999, 1943 C. B. 144.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

Murdock, *J.*, dissenting: Here there was in fact a sale of a capital asset held for more than six months. The statute requires that when such a capital asset is sold the amount realized from the sale shall be offset by the adjusted basis and the excess shall be taxed as a long term capital gain. Secs. 111 (a), (b), 117 (a) (1), (4). Cf. *Rotorite Corporation* v. *Commissioner*, 117 Fed. (2d) 245, reversing 40 B. T. A. 1304; *Goldfields of America, Ltd.*, 44 B. T.A. 200; *Helser Machine & Marine Works, Inc.*, 39 B. T. A. 644; *Judson Mills*, 11 T. C. 25; *Virginia Iron, Coal & Coke Co.*, 37 B. T. A. 195; affd., 99 Fed. (2d) 919; certiorari denied, 307 U. S. 630. The report fails to follow the statute, and for reasons which I deem inadequate.