JACK AUGUST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES BEATTY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY KRAMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24700, 24701, 24702. Promulgated January 14, 1952.

*H. P. Forrest, Esq.*, and *James Knight, Esq.*, for the petitioners.
*F. L. Van Haaften, Esq.*, for the respondent.

OPINION.

Arundell, *Judge:* The question for decision in these proceedings is whether the amount of $28,000 (consisting of the sums of $5,000 and $23,000) was rental income as determined by the respondent, or was a security deposit as contended by the petitioners. The parties appear to be agreed upon the proposition that the foundation for the disposition of the question is the effect that is to be given to the second lease agreement that was entered into between the petitioners and their lessee in the year 1945.

The first lease, dated March 27, 1945, provided for payment for "rental" payable in specified installments, the first two of which aggregated the $28,000 that is here involved. It also provided that the "sums of rent" prescribed "shall be earned on their respective maturity dates" and "in addition to representing rent, represent security for the performance by the lessee." The petitioners acknowledge on brief that under that agreement the $28,000 of initial payments would constitute advance rental. But, they say, that because of a mistake made in drafting the March 27th lease, a revision was necessary to set forth correctly the agreement between the lessors and the lessee, which was accomplished by the lease of December 3, 1945, which sets forth the actual agreement of the parties.

The evidence does not convince us that the lease agreement of March 27, 1945, did not express the intent and agreement of the parties at that time and at the time the $28,000 was paid. There is evidence that considerable time, perhaps two weeks, was spent in drafting the first lease. The petitioners had conferences with their attorney concerning the provisions of that lease. The petitioners discussed the terms of that lease with the lessee in the office of their attorney. The lessee read the lease thoroughly and he understood that the $28,000 was in payment of the last year's rent. It was signed by all parties and witnessed by their attorneys. Moreover, on the evidence, it is difficult to ascribe error to the attorney in drafting the lease, as contended by the petitioners. He apparently was fully aware of the difference in legal consequences of an advance rental payment and a security deposit. Payments aggregating $4,000 to be made in 1949 were provided for under a separate provision in the lease which bore the caption "Security Payment." The purpose, and use to be made, of such payments are described in detail, and among which are that they "shall never be applied as rent," and that upon performance of the terms of the lease "the Lessors will return to the Lessee the said security payments." In contrast to such specific treatment of what the parties obviously intended to be security payments, the $28,000 involved constituted part of the payments which, according to the lease terms "in addition to representing rent, represent security for the performance by the

lessee." The lessee had the very definite conviction that the $28,000 that he paid was on account of rent. Consequently, it cannot be said that there was a mutual mistake on the part of the parties to the first lease which would warrant a reformation of the original agreement so as to express an intent other than set forth in that agreement.

In the practical aspects of the case, the parties to the lease disregarded the terms of the second agreement as to the return to the lessee of the $28,000. The lessors and the lessee merely made simultaneous exchanges of checks. For all practical purposes, the $28,000 was applied upon rentals for the last few months of the lease term.

Upon consideration of all of the evidence, we conclude that the first agreement, dated March 27, 1945, expressed the real intent of the parties to it. Under that agreement, these proceedings come within the rule, as expressed in *Gilken Corporation*, 10 T. C. 445, affd. 176 F. 2d 141, that "where payments are made merely as rent and made at the beginning of the lease, though for the final period thereof, they are, there being no other conditions, taxable as income at the time they are received."

The present case is distinguishable from the case of *John Mantell*, 17 T. C. 1143, decided this day. In the *Mantell* case, the amount deposited by the lessee was initially regarded by the parties to the lease as a security deposit, was so described in the lease, was so treated by the lessor in his accounts, and in all subsequent transactions, including litigation, it was described and treated as a security deposit. While there was in that case an amended lease, the amendments effected no change in the purpose for which the security deposit was originally made by the lessees. Consequently, the decision in the *Mantell* case, resting as it does on entirely different facts, is not controlling in the present case.

*Decisions will be entered for the respondent.*