George E. Ericksen and Agnete B. Ericksen v. Commissioner.
Ericksen v. Commissioner
Docket No. 3114-62.
United States Tax Court
T.C. Memo 1964-111; 1964 Tax Ct. Memo LEXIS 223; 23 T.C.M. (CCH) 643; T.C.M. (RIA) 64111; April 27, 1964
*223 1. On July 30, 1959, petitioners and petitioner-husband's mother, as lessors, leased certain property for a term of 49 years for a total rental of $686,000 ($14,000 per year) $28,000 "payable on execution of this lease." At about the same time the lessors entered into an "Agreement for Division of Rent" whereby it was agreed that as long as petitioner-husband's mother shall live, she was to receive $4,500 of the yearly rental and petitioners were to receive $9,500. On February 20, 1962, an "Amendment to Lease" was executed between the lessors and lessee, wherein it was agreed that $14,000 of the $28,000 was to be the first year's rent and $14,000 was to be held by the lessors as security for the faithful performance by the lessee of all the terms, covenants and conditions of the lease. The parties agree that of the first $14,000, $9,500 is includable in petitioners' gross income. As to the second $14,000, it is held that $9,500 is also includable in petitioners' gross income as advance rental rather than excludable as a security deposit. 2. The deductibility of claimed deductions for depreciation and several other items determined. Lee M. Galloway, for the petitioners. Eugene H. Ciranni, for the respondent. ARUNDELL
*224 Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1959 of $6,110.59. Petitioners have assigned alleged errors, as follows: (a) Increasing gross income in the amount of $17,808.46 as the result of an adjustment to leasehold income reported. (b) Increasing rental income in the amount of $786.61 as a result of failure to allow depreciation on leased property. (c) Failure to allow contributions in the amount of $86.00, interest in the amount of $388.48, taxes in the amount of $7.16, medical and dental expenses in the amount of $553.65, and other itemized deductions in the amount of $31.75. (d) The allowance of a standard deduction in the amount of $1,000.00. In connection with *225 assignment (b), $500 of the $786.61 was depreciation claimed on a trailer. Petitioners at the hearing abandoned their claim for any depreciation on the trailer. In paragraph 5(a) of the amended petition it is alleged: In the alternative, should it be determined that Petitioners are taxable on $14,000.00 paid into escrow by lessee, which is asserted to be a security deposit, respondent has not apportioned $4,500.00 of this amount to lessor Mary Lydia Ericksen Baker, pursuant to the terms of Agreement for Division of Rent. Findings of Fact The stipulated facts, together with the exhibits attached to the stipulation, are so found and are incorporated herein by this reference. Petitioners are husband and wife, residing at Al Tahoe, El Dorado County, California. They filed a joint Federal income tax return for the calendar year 1959 with the district director of internal revenue at San Francisco, California. Mary Lydia Ericksen Baker is the mother of petitioner George E. Ericksen and resides in El Dorado County, California. On July 30, 1959, petitioners and Baker, as lessors, leased four parcels of real property with appurtenances to Western Warehouse Co., a California corporation *226 for a term of 49 years commencing with July 31, 1959. Paragraph 3 of the lease (before amendment) provided: 3. RENT: The total rent shall be the sum of six hundred and eighty six thousand dollars ($686,000.00), payable as follows: The sum of twenty eight thousand dollars ($28,000.00) payable on execution of this lease, representing the first years rent, which said sum is payable by assuming the existing loan on the property of approximately sixty six hundred dollars ($6,600.00), plus cash to said loan, totaling twenty eight thousand dollars ($28,000.00), and the balance of said rent payable at the rate of fourteen thousand dollars ($14,000.00) per year, payable on the 14th day of July, of each year, commencing with July 14, 1960, until the total sum of $686,000.00 has been paid. The lease also provided that the lessee would pay all taxes and assume the obligations of the lessors in an existing lease from the lessors to the Standard Oil Company of California. Paragraph 9 of the lease provided that all improvements shall remain the property of lessee during the term of the lease. Paragraph 10 of the lease specifically included certain motel furniture, furnishings, fixtures, *227 and appliances. The lessee agreed to keep the same in good condition. The lessee was given the right to remove such personal property presently located on the premises but, if it did so, the lessee agreed that upon termination of the lease the lessee would replace the property, either in kind or in value, the value of which shall always be at least $15,000. Paragraph 14 of the lease gives the lessee on option to purchase the leased property at any time subsequent to the commencement of the tenth year of the lease and prior to the termination of the 15th year for a total purchase price of $250,000, payable as follows: * * * 29% down, and lessee's are to receive credit for * * * ($14,000.00) paid on the first year of this lease on said 29% down, and the balance in installments of $20,000.00, or more, per year, including interest at the rate of 6% per annum, until paid. * * * On or about August 1, 1959, petitioners and Baker executed a document entitled "Agreement for Division of Rent." This agreement provided that during the lifetime of Baker the annual rental was to be divided $4,500 to Baker and $9,500 to petitioners, and after Baker's death $2,500 to her heirs and assigns and *228 $11,500 to petitioners. Also, in the event the lessee exercised the option to purchase, then Baker was to receive $40,000 from the purchase price and petitioners were to receive the balance. On February 20, 1962, the lessors and lessee of the 49-year lease executed a document entitled "Amendment to Lease." This document amended paragraph 3 of the original lease (previously herein set out in full) to read as follows: The total rent shall be the sum of $686,000.00, payable as follows: The sum of $14,000.00 paid upon execution of this lease, representing the first year's rent, which said sum is payable by assuming the existing loan on the property of approximately $6,600.00 and paying the difference in cash to Lessor, totalling $14,000.00, and the balance of said rent will be payable at the rate of $14,000.00 per year, payable on the 14th day of July of each year, commencing with July 14, 1960, until the total sum of $686,000.00 has been paid. In addition, Lessee has, contemporaneously with the execution of this lease, deposited with Lessor an additional $14,000.00, receipt of which is hereby acknowledged by Lessor. This sum shall be hald by Lessor as security for the faithful performance *229 by Lessee of all of the terms, covenants, and conditions of this lease by said Lessee to be kept and performed during the term hereof. If at any time during the term of this lease any of the rent herein reserved shall be overdue and unpaid, or any other sum payable by Lessee to Lessor hereunder shall be overdue and unpaid, then Lessor may, at the option of Lessor (but Lessor shall not be required to) appropriate and apply any portion of said $14,000.00 payment to any such overdue rent or other sums. In the event of the failure of Lessee to keep and perform all the terms, covenants, and conditions of this lease to be kept and performed by Lessee, then at the option of Lessor said Lessor may appropriate and apply said $14,000.00, or so much thereof as may be necessary, to compensate Lessor for all loss or damage sustained or suffered by Lessor due to such breach on the part of Lessee. Should the entire $14,000.00, or any portion thereof, be appropriated and applied by Lessor for the payment of overdue rent or other sums due and payable by Lessee to Lessor hereunder, then Lessee shall, upon the written demand of Lessor, forthwith remit to Lessor a sufficient amount in cash to restore *230 said security to the original sum of $14,000.00, and Lessee's failure to do so within thirty days after receipt of such demand shall constitute a breach of this lease. During the last year of this lease, Lessor may, at Lessor's option, apply said security deposit to the payment of the last year's rent, or, Lessor may require Lessee to pay said rent, and providing Lessee has complied with all the terms, covenants, and conditions of said lease, the said sum of $14,000.00 shall be returned in full to Lessee at the end of the term of this lease. The escrow agent for the lessors and lessee, Inter-County Title Company, applied $6,560 of the $28,000 payable on execution of the lease toward a loan owed by petitioners to the Bank of America, paid $7,500 to Malcolm Merrill, the real estate agent who handled the transaction for the lessors, paid $354.12 of pro rata rent, $344.40 of pro rata interest, $121.85 of closing costs, and then paid the balance of $13,119.63 to petitioners. On August 7, 1959, petitioner George E. Ericksen paid his mother $4,500. The lessors were obligated to pay Merrill the sum of $14,000 as a commission. To accomplish this payment, $7,500 was paid to Merrill out of *231 escrow, as stated above, and the lessors signed a note for the balance of $6,500 dated July 31, 1959, payable on or before August 1, 1961, with interest at 6 percent per annum. The final draft of the 49-year lease was prepared by an attorney for the petitioners. On its income tax return for 1959, the lessee deducted the entire $28,000 as rent expense. Prior to February 20, 1962, the date of the amendment to lease, $14,000 of the amount deducted was disallowed by the Internal Revenue Service. The amendment to lease was executed after the Internal Revenue Service had questioned petitioners regarding the correctness of their 1959 joint return. The amendment to lease did not place any restriction on the use by petitioners of the $14,000 asserted to be a security deposit and petitioners were not required to deposit the sum in a special account. The properties leased by the lessors are located in a busy commercial area and have substantially increased in development and value since July 1959. On their joint return for 1959 petitioners reported $4,878.15 as leasehold income. The respondent determined that petitioners should have reported $22,686.61, an increase of $17,808.46. As *232 shown in a statement attached to the deficiency notice, he arrived at the $22,686.61, as follows: Rental income received in 1959
$28,000.00
Amount apportioned to your mother,
Mrs. Baker
4,500.00
Amount received by you
$23,500.00
Less: Pro rata rents, etc.
$527.67
Commission ($14,000.00 di-
vided by 49 years)
285.72
813.39
Net leasehold income as corrected
$22,686.61
On their joint return for 1959 petitioners claimed a deduction for depreciation of $786.61 made up of the following: Cabins
$140.00
Trailer
500.00 *
Furniture
96.61
Improvements
50.00
Total depreciation claimed
$786.61
The respondent disallowed the entire amount of $786.61 claimed by petitioners. All of the assets with respect to which petitioners presently claim a depreciation deduction (cabins, furniture, and improvements) were left upon the land when the lessee corporation took possession and were subsequently removed or destroyed by the lessee about a year later pursuant to its authority under the lease. The lessee corporation has built upon the leased land a 50-unit motel and a swimming pool of a total value *233 of approximately $160,000. On their joint return for 1959 petitioners claimed deductions for the following items: Contributions
$ 86.00
Taxes
107.16
Interest
388.48
Medical expenses
553.65
Miscellaneous
31.75
Total
$1,167.04
The respondent disallowed all of the above claimed deductions totaling $1,167.04 and allowed in place thereof a standard deduction of $1,000. Opinion Upon execution of the lease in question, $28,000 was paid by the lessee to the escrow agent. There is no dispute that $14,000 of this amount represents taxable rental income in 1959 and that $4,500 of the $14,000 is apportionable to Baker and not taxable to petitioners. As to the second $14,000, petitioners contend that it was the intention of the parties that this $14,000 represented a security deposit and was not taxable income upon its receipt. In the alternative, they contend that, if the amount be held to constitute advance rental rather than a security deposit, then petitioners are taxable on only $9,500 thereof and that $4,500 thereof should be apportioned to Baker. The criteria to be considered in determining whether an amount paid by a lessee upon exception of a lease *234 is advance rental or a security deposit was illustrated by this Court in two cases handed down on the same day, one holding the payments in question to be security deposits and, as such, nontaxable, John Mantell, 17 T.C. 1143, and the other holding the payments to be taxable as advance rental, Jack August, 17 T.C. 1165. We think the instant case is more like Jack August than John Mantell. All of the $28,000, except the amount paid to Baker under the agreement for division of rent, was used either to pay petitioners' and Baker's obligations or was paid to petitioners without any restriction as to its use. No portion of the $28,000 was required to be segregated. Petitioners strongly emphasize the point that, beginning with the tenth year, if the lessee should elect to exercise its option to buy the property for $250,000, then, under paragraph 14 of the lease, the second $14,000 paid in 1959 was to be credited to the 29 percent downpayment and would thus constitute a part of the purchase price of the property rather than advance rental. Petitioners also strongly emphasize that this very thing is very likely to happen since the property in question is located *235 in a busy commercial area and has substantially increased in development and value since July 1959. This criterion was present in Gilken Corporation, 10 T.C. 445, affd. 176 F. 2d 141 (C.A. 6, 1949). We held, however, that the rent payment element controlled. In affirming our decision, the Sixth Circuit said: Here, the taxpayer had the free and unrestricted use, enjoyment and disposition of the advance rental payments during the taxable years in which received, and was required to return no part of the money. Only upon the contingency of the exercise of the lessee's option to buy, or his default in performance of required conditions of the lease, would the deposits become anything other than rent. * * * Petitioners also contend that paragraph 3 of the lease, before it was amended, was ambiguous when considered in connection with paragraph 14, and that it was therefore amended on February 20, 1962, to clear up the ambiguity. We have set the amendment out substantially in full in our findings and are of the opinion that even if paragraph 3 as orginally written had contained what is now in the amendment the answer would be the same. Except as to the amount *236 that was to be paid Baker, petitioners had unfettered control of the money and, under Edwin B. DeGolia, 40 B.T.A. 845, and Hirsch Improvement Co. v. Commissioner, 143 F. 2d 912 (C.A. 2, 1944), affirming a Memorandum Opinion of this Court, the payments would be considered as advance rental and taxable income. We agree with petitioners' alternative contention that if it be held that the second $14,000 be advance rental then $4,500 of such advance rental should, under the agreement for division of rent, be apportioned to Baker. The agreement specifically provided: That Ericksen and Baker agree that the rent of fourteen thousand dollars ($14,000.00) per year payable under said lease shall be divided between Ericksen and Baker as follows during the lifetime of Baker, to wit: ninety five hundred dollars ($9500.00) to Ericksen and forty five hundred dollars ($4500.00) to Baker. * * * Of course, it is petitioners' contention that no part of the second $14,000 paid upon execution of the lease was advance rental and was therefore nontaxable. We have held, however, that the second $14,000 paid upon execution of the lease was advance rental and, having so held, *237 it seems to us that, notwithstanding the respondent's argument to the contrary, the apportionment under the agreement is mandatory. On their joint return for 1959 petitioners deducted $786.61 for depreciation of cabins, a trailer, furniture, and improvements. Of this amount $500 was for depreciation claimed on the trailer, which claim petitioners have now abandoned. The cabins, furniture, and improvements were on the properties leased to Western Warehouse Co. and were removed by the lessee about a year after the execution of the lease. The respondent disallowed the depreciation claimed by petitioners on the ground that under the terms of the lease the lessee was to maintain the property and upon termination of the lease was to replace it, either in kind or in value of at least $15,000. Petitioners contend that since the lessee did not remove the cabins, furniture, and improvements until some time after 1959, petitioners were entitled to depreciation for all of 1959 or, in any event, for the first seven months of 1959, i.e., until the execution of the lease on July 31, 1959. We are without sufficient evidence to decide whether after the execution of the lease petitioners would be *238 entitled to any depreciation on the cabins, furniture, and improvements but we are of the opinion that until then petitioners would be entitled to some depreciation on these items under section 167, I.R.C. 1954, [1] as the properties were being used in petitioners' trade or business. We hold that under the principle enunciated in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930) petitioners are entitled to 7/12ths of $286.61, or $167.19, as a reasonable allowance under the statute. No evidence was offered as to assignments (c) and (d) and, since these issues have not been mentioned in the briefs, we assume they have been abandoned. Decision will be entered under Rule 50. Footnotes
*. Abandoned at the hearing.↩
1. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear * * * (1) of property used in the trade or business * * *↩